## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>ONH AFC CS INVESTORS, LLC, *et al.*,[1]<br><br>*Debtors.* | Chapter 11 (Subchapter V)<br><br>Case No. 23-10931 (CTG)<br>(Jointly Administered) |
| ANNA PHILLIPS, in her capacity as Liquidating Trustee of the ONH Liquidating Trust<br><br>*Plaintiff,*<br><br>v.<br><br>ELI STEINMETZ, LEVI COHEN, and ZALMAN SKOBLO, individuals, | Adv. Proc. No. 24-50086 (CTG) |
| LEVI COHEN, and ZALMAN SKOBLO, individuals,<br><br>*Third-Party Plaintiffs,*<br><br>v.<br><br>ELCHONON "ELIE" SCHWARTZ, an individual, ONE NIGHT HOLDINGS, LLC, ONH 14 53RD ST LLC, and NIGHTINGALE PROPERTIES LLC,<br><br>*Third-Party Defendants.* | |

### DEFENDANTS LEVI COHEN AND ZALMAN SKOBLO'S ANSWER, AFFIRMATIVE DEFENSES, AND THIRD-PARTY COMPLAINT IN RESPONSE TO COMPLAINT TO AVOID AND RECOVER TRANSFERS UNDER 11 U.S.C. §§ 544, 548, 550 OF THE BANKRUPTCY CODE AND APPLICABLE STATE LAW, AND OTHER RELATED OR ALTERNATIVE RELIEF

Defendants Levi Cohen and Zalman Skoblo ("Defendants"), hereby submit this answer (the

"Answer") to the Complaint to Avoid and Recover Transfers Under 11 U.S.C. §§ 544, 548, 550 of the

Bankruptcy Code and Applicable State Law, and Other Related or Alternative Relief ("Complaint"),

---

[1] The last four digits of the Debtors' federal tax identification numbers are 1199 (ONH AFC CS Investors LLC) and 6326 (ONH 1601 CS Investors LLC). The Debtors' mailing address is 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326.

filed by Anna Phillips, in her capacity as the Liquidating Trustee (the "Trustee") of the ONH

Liquidating Trust, in the above-captioned adversary proceeding.[2]

This Answer is based on Defendants' reasonable inquiry and knowledge to date. Defendants

reserve the right to amend, supplement, clarify, or correct the responses set forth herein as additional

information becomes available to them.

## NATURE OF THE PROCEEDING[3]

1.      The Trustee seeks entry of a judgment against the Defendants: (i) avoiding Fraudulent

Transfers (as defined herein) pursuant to Sections 544(b) and 548(a) of the Bankruptcy Code and

applicable state law, and related subsequent transfers under Section 550 of the Bankruptcy Code; (ii)

directing the Defendants and/or any other defendant determined to be an initial, subsequent or

mediate transferee, or party for whose benefit the avoided transfers were made, to pay the Trustee an

amount to be determined that is not less than the amount of the Fraudulent Transfers, plus interest

and costs, pursuant to Section 550(a) of the Bankruptcy Code; and (iii) as alternative relief to the

fraudulent transfer claims, awarding the Trustee damages for the Defendants' unjust enrichment.

**RESPONSE:** Paragraph 1 is a statement of the case to which no response is required. To the

extent Paragraph 1 purports to make factual assertions, Defendants admit that the Trustee has

purported to assert claims against them, as well as against Defendant Eli Steinmetz, seeking to avoid

alleged fraudulent transfers pursuant to Sections 544(b) and 548(a) of the Bankruptcy Code and

applicable state law, and related subsequent transfers under Section 550 of the Bankruptcy Code, and

deny the remaining allegations of Paragraph 1.

---

[2] For the avoidance of doubt, this Answer is not being filed on behalf of Defendant Eli Steinmetz.

[3] Defendants have included the section headers from the Complaint solely as points of reference, and deny the factual allegations in the Complaint's section headers.

## JURISDICTION AND VENUE

2.      This adversary proceeding relates to the Chapter 11 cases of ONH AFC CS Investors, LLC ("ONH AFC CS") and ONH 1601 CS Investors, LLC ("ONH 1601 CS" and collectively with ONH AFC CS, the "Debtors"), which cases are pending post-confirmation before the United States Bankruptcy Court for the District of Delaware (the "Court") and are being jointly administered under Case No. 23-10931 (collectively, the "Bankruptcy Cases"). The Court confirmed the Debtors' Joint Plan of Liquidation on December 14, 2023 (Doc. No. 214 in the Bankruptcy Cases).

**RESPONSE:** Admitted.

3.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b).

**RESPONSE:** Paragraph 3 states a legal conclusion to which a response is not required.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O).

**RESPONSE:** Paragraph 4 states a legal conclusion to which a response is not required.

5.      Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**RESPONSE:** Paragraph 5 states a legal conclusion to which a response is not required.

6.      The Trustee consents to entry of final orders and judgments by the Court in this adversary proceeding, regardless of whether it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**RESPONSE:** Paragraph 6 states a legal position by the Trustee to which a response is not required. Pursuant to Federal Rule of Bankruptcy 7012(b) and Local Bankruptcy Rule 7012-1, Defendants state that they consent to entry of final orders and judgments by this Court in this adversary proceeding.

## PROCEDURAL BACKGROUND

7.      On July 14, 2023, (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V of the Bankruptcy Code (Doc. No. 1 in the Bankruptcy Cases).

**RESPONSE:** Admitted.

8.      Additional factual background relating to the Debtors' businesses and the commencement of the Bankruptcy Cases is set forth in detail in the *Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* (Doc. No. 2 in the Bankruptcy Cases). Factual background more specific to this complaint is set forth below.

**RESPONSE:** Defendants admit that the *Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* was filed as Doc. No. 2 in the Bankruptcy Cases, but lack knowledge and/or information sufficient to admit or deny the statements in that declaration and therefore deny them. sufficient. Defendants admit that the Complaint purports to set forth "[f]actual background more specific to this complaint," but deny any such "factual background" is true and accurate unless specifically admitted elsewhere in this Answer.

9.      This adversary proceeding is part of the Trustee's continuing obligation to recover assets for the benefit of the Debtors' respective bankruptcy estates.

**RESPONSE:** Defendants lack information and/or knowledge sufficient to admit or deny the allegations in Paragraph 9.

10.      Specifically, this adversary proceeding relates to ONH AFC CS's bankruptcy estate.

**RESPONSE:** Denied.

## PARTIES

11.     ONH AFC CS was a Delaware limited liability company. At the time of the Fraudulent

Transfers (defined below), ONH AFC CS's principal place of business was 1430 Broadway, Suite

1605, New York, New York 10018.

**RESPONSE:** Defendants admit that ONH AFC CS was a Delaware limited liability company

with its principal place of business at 1430 Broadway, Suite 1605, New York, New York 10018.

Defendants deny that any transfer to or involving either of them is a "fraudulent transfer."[4]

12.     At the time of the Fraudulent Transfers (defined below), One Night Holdings LLC's

("One Night Holdings") principal place of business was 1430 Broadway, Suite 1605, New York, New

York 10018. One Night Holdings was a limited liability company formed in Delaware.

**RESPONSE:** Defendants admit that One Night Holdings LLC was a Delaware limited

liability company with a principal place of business at 1430 Broadway, Suite 1605, New York, New

York 10018. Defendants deny that any transfer to or involving either of them is a "fraudulent

transfer."

13.     Anna Phillips is the Liquidating Trustee ("Trustee") of the ONH Liquidating Trust

("ONH Trust").

**RESPONSE:** Admitted.

14.     The ONH Trust is the successor in interest to ONH AFC CS's claims and causes of

action under the *Amended Small Business Debtors' Plan of Liquidation* (Doc. No. 202-1 in the Bankruptcy

Cases) (the "Plan") confirmed by the Bankruptcy Court by an order entered December 14, 2023 (Doc.

No. 214 in the Bankruptcy Cases) (the "Confirmation Order"). Under the Plan and Confirmation

---

[4] This Answer occasionally uses the terms defined in the Complaint, including the defined term
"Fraudulent Transfer," solely as points of reference, and deny that any such term correctly describe
what the term purports to define.

Order, certain investors assigned to the ONH Trust their claims and causes of action related to the Debtors.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 14, and therefore deny them. To the extent Paragraph 14 purports to describe the terms of the *Amended Small Business Debtors' Plan of Liquidation* or the Bankruptcy Court's Confirmation Order, Defendants respond that those documents speak for themselves.

15.     Upon information and belief, Eli Steinmetz ("Mr. Steinmetz") is an individual having an address in Union City, New Jersey.

**RESPONSE:** Defendants admit that Mr. Steinmetz is an individual, but lack sufficient information and/or knowledge to admit or deny the remaining allegations in Paragraph 15.

16.     Upon information and belief, Levi Cohen ("Mr. Cohen") is an individual having an address in Elizabeth, New Jersey.

**RESPONSE**: Defendants admit that Mr. Cohen is an individual, but deny the remaining allegations in Paragraph 16.

17.     Upon information and belief, Zalman Skoblo ("Mr. Skoblo") is an individual having an address in Brooklyn, New York.

**RESPONSE:** Admitted.

18.     Upon information and belief, Nussbaum Lowinger LLP is a New York limited liability partnership having an address of 225 Broadway, 36th Floor, New York, New York 10007. The Trustee has not included Nussbaum Lowinger as a defendant in this adversary proceeding because, upon information and belief, Nussbaum Lowinger was a conduit for the Defendants, but reserves all rights with respect thereto.[5]

---

[5] If the Trustee's discovery and investigation reveals any facts to the contrary, the Trustee reserves the right to include Nussbaum Lowinger as a defendant.

**RESPONSE:** Defendants admit that Nussbaum Lowinger LLP is a New York limited liability partnership having an address of 225 Broadway, 36th Floor, New York, New York 10007. The second sentence and footnote of Paragraph 18 is a legal conclusion to which no response is required.

### FACTUAL BACKGROUND RELATED
### TO ONH AFC CS AND THE BANKRUPTCY CASES

19.    ONH AFC CS was formed to raise equity from third parties by representing that the money was for the purposes of investing indirectly in property holding companies that would own commercial real estate in Atlanta, Georgia.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 19.

20.    ONH AFC CS's limited liability company agreement (the "ONH AFC CS Operating Agreement") provided for the governance of ONH AFC CS's affairs, the conduct of its business, and the relations among its members.[6]

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 20. To the extent Paragraph 20 and its associated footnote purport to describe the terms of the ONH AFC CS Operating Agreement, Defendants state that the document speaks for itself.

21.    Mr. Elchonon (also known as "Elie") Schwartz formed ONH AFC CS in 2022. Before and concurrent with the events described herein, Mr. Schwartz formed and operated several companies (collectively, the "Nightingale Group") that invested in commercial real estate and were

---

[6] Section 12.3(a) of the ONH AFC CS Operating Agreement also stated: "The Manager shall have fiduciary responsibility for the safekeeping and use of all funds and assets of the Company, whether or not in their immediate possession or control. The Company's funds shall not be commingled with the funds of any other Person and the Manager shall not use, or permit use of, the Company's funds in any manner except for the benefit of the Company."

organized under either One Night Holdings or The Nightingale Group, LLC together with One Night Holdings and their affiliates, collectively, "Nightingale").

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 21. Defendants state, upon information and belief, the "Nightingale Group" is not a formal legal entity, but is a plaintiff-created term to define a series of entities formed and operated by Mr. Schwartz, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS and ONH AFC LLC. Defendants further state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo (defined below), without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

22.    ONH AFC CS was created to raise equity from investors to fund, in part, the purchase of the Atlanta Financial Center, a large commercial real estate complex in Atlanta, Georgia, located at 3333 Peachtree Road NE, 3343 Peachtree Road NE, and 3353 Peachtree Road NE (the "Atlanta Financial Center"). Based on documents provided to investors, Mr. Schwartz stated that he intended that ONH AFC CS would enter into a series of transactions that, together with other entities, would establish a capital structure for an anticipated transaction involving the purchase of the Atlanta Financial Center.[7] Mr. Schwartz stated that these transactions were to occur when all of the capital providers and entities raised their portion of capital for the overall transaction.

---

[7] The anticipated capital structure provided to investors will be explained in greater detail below.

**RESPONSE:** Defendants admit that the Atlanta Financial Center is a large commercial real estate complex in Atlanta, Georgia. Defendants lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 23.

23.     Mr. Schwartz, through the Debtors and other affiliates, informed potential investors that ONH AFC LLC ("Prop. Co."), a similarly named legal entity, planned to purchase and renovate the Atlanta Financial Center using money raised from the following sources: (1) equity from investors whom ONH AFC CS solicited through a capital raising platform owned and operated CrowdStreet, Inc. ("CrowdStreet"); (2) equity from other investors; (3) equity from Nightingale entities; and (4) senior secured indebtedness.

**RESPONSE:**  Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 23.

24.     At the time of the Offerings (defined below), ONH AFC CS's manager was One Night Holdings.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 24.

25.     Upon information and belief, One Night Holdings' manager was Mr. Schwartz.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegation in Paragraph 25. Defendants note, however, that the allegation in Paragraph 25 is inconsistent with the statement in the *Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* (Doc. No. 2 in the Bankruptcy Cases), which states that an entity called Nightingale Properties LLC managed One Night Holdings. *See Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* at para. 9. The Trustee's inconsistency and inability to distinguish between the corporate separateness amongst the Nightingale entities further underscores Defendants' belief that Mr. Schwartz operated and controlled the Nightingale entities without regard to corporate formalities,

intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

26.     ONH AFC CS planned to raise funds from accredited investors solicited using the CrowdStreet investor platform, which qualified as a private placement under Regulation D of the Securities Act of 1933.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 26. Defendants state that whether use of the Crowdstreet investor platform qualified as a private placement under Regulation D of the Securities Act of 1933 is a legal conclusion to which no response is required.

### A.     The CrowdStreet Platform Arrangement

27.     To begin raising equity for the Offerings (defined below), a Nightingale entity signed a marketplace services agreement with CrowdStreet (the "MSA") to access its community of accredited investors who invest using CrowdStreet's services.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 27.

28.     Pursuant to the MSA, Nightingale entities would then execute additional term sheets related to specific project offerings—such as for the Atlanta Financial Center (the "CrowdStreet Term Sheet").

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 29. To the extent Paragraph 28 purports to describe the terms of the MSA, Defendants state the document speaks for itself.

29.     The CrowdStreet Term Sheet referred to the project offering as being categorized under "Specific Project Offerings," which limited the use of proceeds to only certain pre-identified and selected properties which were readily identifiable. CrowdStreet Term Sheet, n. 1.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 29. To the extent Paragraph 28 purports to describe the terms of the CrowdStreet Term Sheet, Defendants state the document speaks for itself.

30.     The MSA required that all funds raised from investors be held in a segregated account until the closing of the Atlanta Financial Center project. Section 5.3 of the MSA provides:

> [Nightingale] agree[s] to establish a separate bank account or escrow account for each Project Offering and to provide funding instructions to investors through the Management Console. [Nightingale] shall deposit all User contributions, funds, or subscriptions into the bank account or escrow account you establish and hold it or have it held in trust until the closing of each Project Offering. If a Project Offering fails to close for any reason, [Nightingale] agree[s] to return investor contributions in full and promptly but no later than thirty (30) calendar days following failure of the Project Offering to close.

MSA, § 5.3.

**RESPONSE:** Defendants state that the terms of the MSA speaks for themselves. To the extent Paragraph 30 asserts additional factual allegations, Defendants lack knowledge/or information sufficient to admit or deny such allegations, and therefore deny them. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

**B.    The Subscription Process for ONH AFC CS**

31.     Nightingale proceeded to obtain third-party investments through an offering for ONH AFC CS (the "AFC Offering") placed on CrowdStreet's website, which is known as the CrowdStreet Marketplace.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 31, and therefore deny them. Defendants state, upon information

and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together

32.      Upon information and belief, on or about April 25, 2022, Mr. Schwartz caused ONH AFC CS to be formed in Delaware.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 32, and therefore deny them.

33.      Nightingale launched the AFC Offering on the CrowdStreet Marketplace on or about May 26, 2022.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 33, and therefore deny them.

34.      Accredited investors could then review AFC Offering materials, learn more about the Atlanta Financial Center, and complete their investment documents through the CrowdStreet Marketplace.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 34, and therefore deny them.

35.      In connection with the AFC Offering, a private placement memorandum (the "Atlanta Financial Center PPM" or "PPM") outlined the terms of the investment and conditioned the use of the funds raised only upon closing the purchase of the property.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 35, and therefore deny them. Defendants further state that the terms of any such Atlanta Financial Center PPM speak for themselves.

36.     Specifically, the Atlanta Financial Center PPM stated: "The proceeds from this Offering will be used to purchase, lease, reposition, and extensively renovate [the Atlanta Financial Center]." PPM, p.8.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 36, and therefore deny them. Defendants further state that the terms of any such Atlanta Financial Center PPM speak for themselves.

37.     The PPM also stated that: "If the Manager elects not to close on the Property for any reason by September 11, 2022, subscription funds from potential Investors will be returned." PPM, p. 8.

**RESPONSE:** Defendants state that the terms the Atlanta Financial Center PPM speak for themselves. To the extent Paragraph 37 purports to make additional factual allegations, Defendants lack knowledge and/or information sufficient to admit or deny such allegation, and therefore deny them.

38.     Accredited investors who opted to invest in response to the AFC Offering were required to execute subscription agreements (the "Subscription Agreement") governing their investments to fund the purchase, leasing, reposition, and renovation of the Atlanta Financial Center.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 38.

39.     Furthermore, the Subscription Agreement provided: "The Company will use any proceeds from this Offering, net of any organizational and offering expenses, to fund through its direct or indirect subsidiaries" the Atlanta Financial Center "Managed by One Night Holdings LLC." Subscription Agreement, p. 1.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 39. To the extent Paragraph 39 purports to describe the terms of the

Subscription Agreement, Defendants state that the terms of the Subscription Agreement speak for themselves.

40.    The Subscription Agreement, PPM, and MSA each made clear that investors' subscription money would only be used on or after the closing of the purchase of the Atlanta Financial Center and, if not so utilized, returned to investors.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 40. To the extent Paragraph 40 purports to describe terms of the terms of the Subscription Agreement, PPM, and MSA, Defendants state such documents speak for themselves.

41.    The Subscription Agreement directed investments of capital to be deposited into ONH AFC CS's bank account, which was controlled by Mr. Schwartz on behalf of ONH AFC CS.

**RESPONSE:** Defendants admit that Mr. Schwartz controlled the Nightingale entities, including ONH AFC CS and its bank account, but lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 41. To the extent paragraph 41 purports to describe the terms of the Subscription Agreement, Defendants state that the terms of the Subscription Agreement speak for themselves.

42.    ONH AFC CS raised approximately $44 million (net of refunds) through the AFC Offering from 654 investors for the Atlanta Financial Center project.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 42.

43.    The ONH AFC CS Operating Agreement required that ONH AFC CS only use the funds for its own "benefit" and not for the benefit of others. Specifically, Section 12.3 of the Operating Agreement provided: "[t]he Manager shall have fiduciary responsibility for the safekeeping and use of all funds and assets of the Company, whether or not in their immediate possession or control. The

Company's funds shall not be commingled with the funds of any other Person and the Manager shall not use, or permit use of, the Company's funds in any manner except for the benefit of the Company."

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 43, and therefore deny them. To the extent paragraph 39 purports to describe the terms of the Subscription Agreement, Defendants state that the terms of the ONH AFC CS Operating Agreement speak for themselves. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

      **C.**    **The AFC Proposed Transaction**

44.    On May 3, 2022, Prop. Co. entered into a purchase agreement with USPO Atlanta LLC for the acquisition of the Atlanta Financial Center (the "AFC Sale Contract").

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 44. To the extent Paragraph 44 purports to describe the terms of the AFC Sale Contract, Defendants state the document speaks for itself.

45.    Upon information and belief, Mr. Schwartz intended that Prop. Co. would arrange senior secured debt financing in connection with that purchase. Atlanta Financial Center PPM, p. 8.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 45. To the extent Paragraph 45 purports to describe the terms the Atlanta Financial Center PPM, Defendants state that the document speaks for itself.

46.    Upon information and belief, upon the closing of the AFC Sale Contract, Mr. Schwartz intended that ONH AFC CS would enter into certain transactions and use the solicited funds to

15

acquire an interest as one of two members of an entity called ONH AFC CS Mezz, LLC, a Delaware limited liability company ("AFC Mezz"), and AFC Mezz would acquire the interest in Prop. Co. Atlanta Financial Center. PPM, pp. 7-8.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 46. To the extent Paragraph 46 purports to describe the terms the Atlanta Financial Center PPM, Defendants state that the document speaks for itself.

47.     But, at no time did ONH AFC CS execute any contract that contained, or otherwise obtain, a legal right to any interest in any property (including the Atlanta Financial Center or otherwise).

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 47.

48.     And, at no time did ONH AFC CS acquire any of the membership interests (or right to them) as provided in the equity raise documents or contemplated deal structure.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 48.

49.     From the start of the subscription process until just before the Bankruptcy Cases, Nightingale Group published notes to investors through CrowdStreet Marketplace providing updates on the Atlanta Financial Center project, including issues and difficulties encountered in closing the purchase of the property.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 49.

50.     Despite never executing contracts for the purchase of assets and despite the project never closing, the Debtors caused certain Fraudulent Transfers (defined below) to be made from the funds deposited by investors.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 50. Defendants specifically deny that any transfers to or involving each of them constitute "fraudulent transfers."

51.     After several communications to investors regarding the status of the Atlanta Financial Center transaction, on May 31, 2023, investors received an update from CrowdStreet detailing further developments on the Atlanta Financial Center, and requesting investor action to appoint a new, independent manager for ONH AFC CS.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 51.

52.     Upon information and belief, ONH AFC CS and Mr. Schwartz made untrue statements of fact and/or omitted statements of materials facts to investors in connection with the AFC Offering, including, without limitation, facts concerning Nightingale's financial wherewithal, Mr. Schwartz's intended use of the funds from the Offering, and his assignment of the AFC Sale Contract to a third party in order to finance the downpayment, among many other things.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 52. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

D.     **Independent Manager**

53.     Ms. Anna Phillips was appointed by an overwhelming majority of the investors as independent manager of ONH AFC CS, effective June 7, 2023 (in this capacity, the "Independent

Manager"). At the same time, Mr. Schwartz (as manager of One Night Holdings) resigned as manager of ONH AFC CS.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 53.

54.     Ms. Phillips immediately began an independent investigation into the location and use of ONH AFC CS's assets and the funds raised through the CrowdStreet Marketplace.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 54.

55.     Ms. Phillips learned that almost all of ONH AFC CS's funds had been withdrawn from bank accounts in the name of ONH AFC CS and dissipated prior to her appointment as Independent Manager.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 55.

56.     Several weeks later, on July 14, 2023, the Debtors filed the Bankruptcy Cases.

**RESPONSE:** Defendants admit that on July 14, 2023, the Debtors filed the Bankruptcy Cases.

57.     After the appointment of the Independent Manager and during the Bankruptcy Cases, the Debtors investigated how the Debtors' funds were dissipated; conducted diligence; and negotiated settlements and other resolutions with Mr. Schwartz, other entities held closely by Mr. Schwartz, and the Nightingale Group.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 55. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities,

18

intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

58.     Through the Bankruptcy Cases, the Debtors confirmed the Plan, and the ONH Trust was formed to pursue claims and causes of action on behalf of the Debtors.

**RESPONSE:** To the extent Paragraph 58 purports to describe the terms of the Plan, Defendants state that the Plan speaks for itself.

59.     On October 12, 2023, the Independent Manager filed a Notice of Settlement attaching a Settlement and Conditional Release Agreement documenting the terms of a settlement reached between the Debtors, Mr. Schwartz, and entities and trusts related to Mr. Schwartz (Doc. No. 148 in the Bankruptcy Cases) (the "Schwartz Nightingale Settlement"). Among the claims settled in the Schwartz Nightingale Settlement were the Debtor's potential claims against Mr. Schwartz and the Schwartz Nightingale Parties "under section 544 of the Bankruptcy Code or otherwise."

**RESPONSE:** Defendants admit that the Independent Manager filed a Notice of Settlement attaching a document entitled Settlement and Conditional Release Agreement with the Bankruptcy Court on October 12, 2023. To the extent Paragraph 59 purports to describe the terms of that Settlement and Conditional Release Agreement, Debtors state that the document speaks for itself. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

60.     On May 7, 2024, following numerous breaches of the Schwartz Nightingale Settlement, the Court entered final judgments for the Debtors (Doc. No. 271) (the "Final Judgments").

**RESPONSE:** Defendants admit that on May 7, 2024, the Bankruptcy Court entered an Order Granting Motion for the Liquidating Trustee for Entry of an Order (I) Enforcing the Schwartz Nightingale Settlement And Confirmation Order (II) Entering Judgments Against the Schwartz Nightingale Parties, and (III) Granting Related Relief. Defendants lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 60.

## FACTUAL BACKGROUND RELATED TO THE FRAUDULENT TRANSFERS

61.     Upon information and belief, before the Bankruptcy Cases, Mr. Schwartz, Mr. Cohen, Mr. Steinmetz, and Mr. Skoblo were involved in two separate business transactions, both unrelated to the Debtors, involving property located in New Jersey and New York.

**RESPONSE:** Denied.

62.     Upon information and belief, in or around December 2022, Mr. Schwartz, Mr. Cohen, and Mr. Skoblo were negotiating a joint venture investment pledge (the "Pledge") related to commercial real estate in Brooklyn, New York (the "Brooklyn Property").

**RESPONSE:** Defendants admit that in December 2022, Mr. Cohen and Mr. Skoblo were negotiating with Mr. Schwartz regarding a commercial real estate property in Brooklyn, New York, but deny the remaining allegations in Paragraph 62.

63.     Upon information and belief, another entity related to Mr. Schwartz, unrelated to the Debtors, owned or partially owned The Brooklyn Property (the "Brooklyn PropCo").

**RESPONSE:** Defendants admit that an entity related to Mr. Schwartz owned or partially owned the Brooklyn Property, but deny the remaining allegations in Paragraph 63.

64.     Upon information and belief, pursuant to the Pledge, Mr. Cohen and Mr. Skoblo would invest in the Brooklyn Property and were required to make certain deposits.

**RESPONSE:** Defendants admit that, pursuant to the Pledge, they agreed to make certain deposits with Mr. Schwartz, but deny the remaining allegations in Paragraph 64.  Defendants further

state that if the transaction concerning the Brooklyn Property did not close, any and all monies deposited by or on behalf of Defendants would be returned.

65.     Upon information and belief, around the same time Mr. Schwartz, Mr. Cohen, and Mr. Skoblo were negotiating the Pledge, Mr. Cohen and Mr. Steinmetz were negotiating a separate Membership Interest Sale Agreement ("MISA") under which Mr. Cohen would sell his

membership interests in two entities, both unrelated to the Debtors, to Mr. Steinmetz. These

entities owned property in Linden, New Jersey, and Elizabeth, New Jersey, respectively.

**RESPONSE:** Defendants admit upon information and belief that Mr. Cohen and Mr. Steinmetz negotiated a MISA in or around December 2022 and that the MISA concerned property in Linden, New Jersey, and Elizabeth, New Jersey. To the extent Paragraph 65 purports to describe the terms of the MISA, Defendants state that the document speaks for itself.

66.     Upon information and belief, Mr. Steinmetz was required to make a $10 million deposit to Mr. Cohen under the MISA.

**RESPONSE:** Defendants state the terms of the MISA speaks for itself.

67.     Upon information and belief, because Mr. Steinmetz owed a deposit to Mr. Cohen under the MISA, and Mr. Cohen owed a deposit to Mr. Schwartz under the Pledge, Mr. Cohen directed Mr. Steinmetz to pay the deposit required under the MISA to Mr. Schwartz. Three payments were made by Mr. Steinmetz (specifically, entities believed to be controlled by Mr. Steinmetz) totaling $7 million, as follows:

| Transferor | Amount | Transferee | Date of Transfer |
|---|---|---|---|
| Entity believed to be controlled by Mr. Steinmetz | $3,000,000 | Brooklyn PropCo | December 19, 2022 |
| Entity believed to be controlled by Mr. Steinmetz | $1,000,000 | One Night Holdings | January 4, 2023 |
| Entity believed to be controlled by Mr. Steinmetz | $3,000,000 | One Night Holdings | January 4, 2023 |
| **TOTAL:** | **$7,000,000** | | |

**RESPONSE:** Defendants admit that Mr. Cohen asked Mr. Steinmetz to transfer amounts owed under the MISA to Mr. Schwartz. Defendants further admit upon information and belief that, at Mr. Schwartz's direction, Mr. Steinmetz transferred a total of $7 million to Mr. Schwartz and/or entities controlled by Mr. Schwartz. Defendants deny the remaining allegations in Paragraph 67.

68.     Upon information and belief, the only document evidencing the transfers described above is a promissory note between Mr. Schwartz, Mr. Cohen, and Mr. Skoblo (the "Promissory Note"). The Promissory Note is for $3 million and is believed to be in support of the December 19, 2022, transfer from an entity controlled by Mr. Steinmetz to the Brooklyn PropCo.

**RESPONSE:** Defendants deny the first sentence of Paragraph 68. Defendants admit that a Mr. Schwartz issued a promissory note to Mr. Cohen and Mr. Skoblo in the amount of $3 million to govern the $3 million transfer to Mr. Schwartz on or around December 19, 2022, and which grants Mr. Cohen and Mr. Skoblo a security interest related to the Brooklyn Property.

69.     Mr. Schwartz executed the Promissory Note as a maker on behalf of himself.

**RESPONSE:** Defendants state that the Promissory Note, including as to the identity of the maker, speaks for itself.

70.     Upon information and belief, the funds deposited to the Brooklyn PropCo and One Night Holdings' bank accounts were expended before the Fraudulent Transfers (defined below).

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 70. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together. Defendants

further state that if the transaction relating to the Brooklyn Property did not close, any and all monies deposited by or on behalf of Defendants would be returned.

71.    Based upon the Independent Manager's investigation carried out after her appointment and during the Bankruptcy Cases, the Debtors' books and records reflect that ONH AFC CS transferred money to or for the benefit of the Defendants, which transfers are listed below and referred to as the "Fraudulent Transfers":

| Transferor | Amount | Transferees | Date of Transfer |
| --- | --- | --- | --- |
| ONH AFC CS | $7,000,000 | One Night Holdings | February 22, 2023 |
| One Night Holdings | $7,000,000 | To or for the benefit of Levi Cohen, Zalman Skoblo, and Eli Steinmetz (through Nussbaum Lowinger as escrow agent) | February 22, 2023 (subsequently transferred from the conduit to or for the benefit of the individual Defendants on or after March 1, 2023) |
| **TOTAL:** | **$7,000,000** | | |

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 71, and therefore deny them. Defendants specifically deny that any transfer by ONH AFC CS, One Night Holdings and/or any other entity controlled by Mr. Schwartz was "to or for the benefit of Levi Cohen [and] Zalman Skoblo" and further deny that any amount was "subsequently transferred from the conduit to or for the benefit of" Mr. Cohen and Mr. Skoblo.

72.    Upon information and belief, after One Night Holdings transferred $7 million to Nussbaum Lowinger on February 22, 2023, Nussbaum Lowinger then transferred the funds to or for the benefit of Mr. Cohen, Mr. Skoblo, and Mr. Steinmetz on or after March 1, 2023.

**RESPONSE:** Denied.

73.    Upon information and belief, Mr. Schwartz directed ONH AFC CS and One Night Holdings to make the Fraudulent Transfers to the Defendants to return the deposits made by Mr.

Steinmetz under the MISA to satisfy Mr. Cohen's and Mr. Skoblo's obligations under the Pledge, but ONH AFC CS and One Night Holdings had no responsibility or obligation to pay those funds. Those were the obligations of Mr. Schwartz or other related entities.

**RESPONSE:** Denied. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together. Defendants further state that if the transaction relating to the Brooklyn Property did not close, any and all monies deposited by or on behalf of Defendants would be returned.

74.     Upon information and belief, One Night Holdings and ONH AFC CS had no responsibility or obligation to return any deposit made by Mr. Steinmetz under the MISA to satisfy Mr. Cohen's and Mr. Skoblo's obligations under the Pledge.

**RESPONSE:** Denied. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

75.     ONH AFC CS and One Night Holdings received no benefit from making the Fraudulent Transfers.

**RESPONSE:** Denied.

76.     Upon information and belief, Mr. Schwartz caused ONH AFC CS and One Night Holdings to make the Fraudulent Transfers to the Defendants to pay his personal obligations or obligations of other related entities.

**RESPONSE:** Defendants admit that the transfers to Nussbaum were made to repay an obligation that Mr. Schwartz and the entities he controlled had to return funds deposited by or on behalf of Defendants, but lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 76.

77.    Upon information and belief, ONH AFC CS and One Night Holdings were not and were never party to the Pledge, MISA, or Promissory Note.

**RESPONSE:** Defendants admit that ONH AFC CS and One Night Holdings were not and were never party to the MISA, but deny the remaining allegations in Paragraph 77.

78.    Upon information and belief, ONH AFC CS and One Night Holdings never received invoices or demands for payment for amounts due under or related to the Pledge, MISA, or Promissory Notes.

**RESPONSE:** Defendants admit that ONH AFC CS and One Night Holdings never received invoices or demands for payment for amounts due under or related to the MISA, but lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 78.

79.    Upon information and belief, ONH AFC CS was not and was never party to any agreement with the Defendants.

**RESPONSE:** Denied. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

80.    Upon information and belief, ONH AFC CS has no relationship and never had a relationship with or to the Defendants.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 80. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

81.    Upon information and belief, ONH AFC CS was never party to any agreement with the Brooklyn PropCo.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 81.

82.    Upon information and belief, ONH AFC CS has no interest and never had an interest in the Brooklyn PropCo.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 82.

83.    Upon information and belief, and as an alternative theory, One Night Holdings was merely a conduit of funds from ONH AFC CS to the Defendant.

**RESPONSE:** Denied. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

84.    Upon information and belief, the Fraudulent Transfers were also made when the Nightingale entities were facing default on loans that financed various real estate projects and when the Nightingale entities were threatened with foreclosure in connection therewith.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 84.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Fraudulent Transfers from ONH AFC CS to Defendants and through One Night Holdings Pursuant to 11 U.S.C. § 548(a)(1)(A))**

85.    The Trustee repeats and realleges all allegations contained in paragraphs 1 through 84 above as if fully set forth herein.

**RESPONSE:** To the extent a response is required to Paragraph 85, Defendants incorporate their response to each preceding paragraph.

86.    Each of the Fraudulent Transfers constitute a transfer of an interest of ONH AFC CS in property made to or for the benefit of the Defendants, or subsequent transfers thereof.

**RESPONSE:** Paragraph 86 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 86.

87.    The Fraudulent Transfers were made with the knowledge that they would hinder, delay and/or defraud creditors, and thus with the actual intent to hinder, delay and/or defraud creditors.

**RESPONSE:** Paragraph 87 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 87.

88.    The Fraudulent Transfers were made to satisfy obligations of Mr. Schwartz, who was an insider of and controlled ONH AFC CS.

**RESPONSE:** Paragraph 88 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants admit that Mr. Schwartz was an insider of and controlled ONH AFC CS, but lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 88. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC,

ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together..

89.     ONH AFC CS was insolvent at the time the Fraudulent Transfers were made or became insolvent as a result of the Fraudulent Transfers.

**RESPONSE:** Paragraph 89 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 89.

90.     The Fraudulent Transfers were not disclosed to third parties.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 90.

91.     The Fraudulent Transfers, or certain of them, were made while ONH AFC CS attempted to keep investors satisfied through overly optimistic updates sent through CrowdStreet's online platform, which induced investors to refrain from requesting refunds of their investments.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 91.

92.     The Fraudulent Transfers were made to maintain other assets and to delay and hinder other creditors with partial payments on outstanding obligations to those creditors.

**RESPONSE:** Paragraph 92 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 92.

93.     ONH AFC CS transferred and dissipated almost all of its funds prior to the appointment of the Independent Manager.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 93.

94.     The Fraudulent Transfers were made when the Nightingale entities were facing default on loans that financed various real estate projects and when the Nightingale entities were threatened with foreclosure in connection therewith.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 94, and therefore deny them.

95.     The Fraudulent Transfers were made for Mr. Schwartz's personal benefit and for the benefit of entities which he controlled (and would continue to control).

**RESPONSE:** Defendants admit that Mr. Schwartz controlled the Nightingale entities, but lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 95. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

96.     The Fraudulent Transfers are avoidable, and the Trustee is entitled to an order and judgment against the Defendants avoiding the Fraudulent Transfers.

**RESPONSE:** Paragraph 96 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 96.

**WHEREFORE,** the Trustee respectfully requests this Court enter a judgment against the Defendants: (i) finding that the Fraudulent Transfers are actually fraudulent and therefore avoidable pursuant to 11 U.S.C. § 548(a)(1)(A); (ii) avoiding the Fraudulent Transfers; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

**RESPONSE:** To the extent a response is required to the Trustee's wherefore clause at page 16 of the Complaint, Defendants deny each and every allegation contained therein.

## COUNT II
### (Avoidance of Fraudulent Transfers from ONH AFC CS to Defendants and through One Night Holdings Pursuant to 11 U.S.C. § 548(a)(1)(B))

97.     The Trustee repeats and realleges all allegations contained in paragraphs 1 through 96 above as if fully set forth herein.

**RESPONSE:** To the extent a response is required to Paragraph 85, Defendants incorporate their response to each preceding paragraph.

98.     Each of the Fraudulent Transfers constitute a transfer of an interest of ONH AFC CS in property made to or for the benefit of the Defendants, or a subsequent transfer thereof.

**RESPONSE:** Paragraph 98 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 98.

99.     Upon information and belief, ONH AFC CS was never legally obligated to pay amounts to any of the Defendants, and ONH AFC CS had no relationship whatsoever with the Defendants. Thus, the Defendants were not creditors of ONH AFC CS.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 99. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

100.    The Defendants did not provide goods, services, or value of any type to ONH AFC CS or One Night Holdings in exchange for the Fraudulent Transfers.

**RESPONSE:** Denied.

101.     The Defendants did not provide ONH AFC CS or One Night Holdings with reasonably equivalent value in exchange for any of the Fraudulent Transfers.

**RESPONSE:** Denied.

102.     ONH AFC CS was insolvent at the time the Fraudulent Transfers were made or became insolvent as a result of the Fraudulent Transfers.

**RESPONSE:** Paragraph 102 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 102.

103.     At the time the Fraudulent Transfers were made, ONH AFC CS was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining constituted unreasonably small capital.

**RESPONSE**: Paragraph 103 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 103.

104.     The Defendants were the initial transferees of the Fraudulent Transfers, or parties for the benefit of whom such Fraudulent Transfers were made.

**RESPONSE:** Paragraph 104 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 104.

105.     The Fraudulent Transfers are avoidable, and the Trustee is entitled to an order and judgment against the Defendants avoiding the Fraudulent Transfers.

**RESPONSE:** Paragraph 105 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 105.

**WHEREFORE**, the Trustee respectfully requests this Court enter a judgment against the Defendants: (i) finding that the Fraudulent Transfers are constructively fraudulent transfers and

therefore avoidable pursuant to 11 U.S.C. § 548(a)(1)(B); (ii) avoiding the Fraudulent Transfers; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

**RESPONSE:** To the extent a response is required to the Trustee's wherefore clause at page 17 of the Complaint, Defendants deny each and every allegation contained therein.

**COUNT III**
**(Avoidance of Fraudulent Transfers from ONH AFC CS to Defendants and through**
**One Night Holdings Pursuant to 11 U.S.C. § 544(b)(1) and NY Debt. & Cred. Law**
**§§ 270 et. seq (270-281-A))[8]**

106.     The Trustee repeats and realleges all allegations contained in paragraphs 1 through 105 above as if fully set forth herein.

**RESPONSE:** To the extent a response is required to Paragraph 106, Defendants incorporate their response to each preceding paragraph. Defendants further state that the footnote to the header of Count III states a legal conclusion to which no response is required.

107.     Each of the Fraudulent Transfers constitute a transfer of an interest of ONH AFC CS in property made to or for the benefit of the Defendants, or a subsequent transfer thereof.

**RESPONSE:** Paragraph 107 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 107.

108.     The Fraudulent Transfers were made with the knowledge that they would hinder, delay and/or defraud creditors, and thus with the actual intent to hinder, delay and/or defraud creditors.

**RESPONSE:** Paragraph 108 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 108.

---

[8] The Trustee is asserting state law claims under New York law rather than New Jersey law in accordance with choice of law principles. However, the Trustee asserts that the claims under New Jersey and New York law are identical.

109.    The Fraudulent Transfers were made to satisfy obligations of Mr. Schwartz or his related entities, who was an insider of and controlled ONH AFC CS.

**RESPONSE:** Paragraph 109 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants admit that Mr. Schwartz was an insider of and controlled ONH AFC CS, but lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 88. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

110.    ONH AFC CS was insolvent at the time the Fraudulent Transfers were made or became insolvent as a result of the Fraudulent Transfers.

**RESPONSE**: Paragraph 110 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 110.

111.    The Fraudulent Transfers were not disclosed to third parties.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 111.

112.    The Fraudulent Transfers, or certain of them, were made while ONH AFC CS attempted to keep investors satisfied through overly optimistic updates sent through CrowdStreet's online platform, which induced investors to refrain from requesting refunds of their investments.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 112.

113.    The Fraudulent Transfers were made to maintain other assets and to delay and hinder other creditors with partial payments on outstanding obligations to those creditors.

**RESPONSE:** Paragraph 113 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 113.

114.    The Fraudulent Transfers were made for Mr. Schwartz's personal benefit and to benefit those entities which he controlled and would continue to control.

**RESPONSE**: Defendants admit that Mr. Schwartz controlled the Nightingale entities, but lack knowledge and/or information sufficient to admit or deny the remaining allegations in Paragraph 114. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together. Defendants further state upon information and belief that any transfers for Mr. Schwartz's personal benefit would also benefit the Nightingale entities which he controlled, including One Night Holdings and/or ONH AFC CS.

115.    ONH AFC CS transferred and dissipated almost all of its funds prior to the appointment of the Independent Manager.

**RESPONSE**: Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 115.

116.    The Fraudulent Transfers were made when the Nightingale entities were facing default on loans that financed various real estate projects and when the Nightingale entities were threatened with foreclosure in connection therewith.

**RESPONSE**: Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 116.

117.    The Fraudulent Transfers are avoidable, and the Trustee is entitled to an order and judgment against the Defendants avoiding the Fraudulent Transfers.

**RESPONSE:** Paragraph 113 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 117.

**WHEREFORE**, the Trustee respectfully requests this Court enter a judgment against the Defendants: (i) finding that the Fraudulent Transfers are actually fraudulent transfers and therefore avoidable pursuant to state law and 544(b)(1) of the Bankruptcy Code; (ii) avoiding the Fraudulent Transfers; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

**RESPONSE:** To the extent a response is required to the Trustee's wherefore clause at page 17 of the Complaint, Defendants deny each and every allegation contained therein.

<u>**COUNT IV**</u>
**(Avoidance of Fraudulent Transfers from ONH AFC CS to Defendants and through One Night Holdings Pursuant to 11 U.S.C. § 544(b)(1) and NY Debt. & Cred. Law §§ 270 *et. seq* (270-281-A))**

118.    The Trustee repeats and realleges all allegations contained in paragraphs 1 through 117 above as if fully set forth herein.

**RESPONSE:** To the extent a response is required to Paragraph 118, Defendants incorporate their response to each preceding paragraph.

119.    Each of the Fraudulent Transfers constitute a transfer of an interest of ONH AFC CS in property made to or for the benefit of the Defendants, or a subsequent transfer thereof.

**RESPONSE:** Paragraph 119 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 119.

120.    The Fraudulent Transfers were made with the knowledge that they would hinder, delay and/or defraud creditors, and thus with the actual intent to hinder, delay and/or defraud creditors.

**RESPONSE:** Paragraph 120 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 120.

121.    Upon information and belief, ONH AFC CS was never legally obligated to pay any amounts to the Defendants and ONH AFC CS had no relationship whatsoever with any of the Defendants. Thus, the Defendants were not creditors of ONH AFC CS.

**RESPONSE:** Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 121. Defendants state, upon information and belief, that Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

122.    The Defendants did not provide goods, services, or value of any type to ONH AFC CS in exchange for the Fraudulent Transfers.

**RESPONSE:** Denied.

123.    The Defendants did not provide ONH AFC CS with reasonably equivalent value in exchange for any of the Fraudulent Transfers.

**RESPONSE:** Denied.

124.    ONH AFC CS was insolvent at the time the Fraudulent Transfers were made or became insolvent as a result of the Fraudulent Transfers.

**RESPONSE:** Paragraph 124 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 124.

125.    At the time the Fraudulent Transfers were made, ONH AFC CS was engaged in business or a transaction, or each was about to engage in business or a transaction, for which any property remaining constituted unreasonably small capital.

**RESPONSE:** Paragraph 125 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants lack knowledge and/or information sufficient to admit or deny the allegations in Paragraph 125.

126.    The Defendants were the initial transferees of the Fraudulent Transfers, or parties for the benefit of whom such Fraudulent Transfers were made.

**RESPONSE:** Paragraph 126 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 126.

127.    The Fraudulent Transfers are avoidable, and the Trustee is entitled to an order and judgment against the Defendants avoiding the Fraudulent Transfers.

**RESPONSE:** Paragraph 127 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 127.

**WHEREFORE,** the Trustee respectfully requests this Court enter a judgment against the Defendants: (i) finding that the Fraudulent Transfers are constructively fraudulent transfers and therefore avoidable pursuant to state law and 544(b)(1) of the Bankruptcy Code; (ii) avoiding the Fraudulent Transfers; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

**RESPONSE:** To the extent a response is required to the Trustee's wherefore clause at page 18 of the Complaint, Defendants deny each and every allegation contained therein.

## <u>COUNT V</u>
### (Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550(a))

128.    The Trustee repeats and realleges all allegations contained in paragraphs 1 through 127 above as if fully set forth herein.

**RESPONSE:** To the extent a response is required to Paragraph 128, Defendants incorporate their response to each preceding paragraph.

129. The Trustee is entitled to avoid the Fraudulent Transfers pursuant to Section 548 of the Bankruptcy Code and applicable state law.

**RESPONSE:** Paragraph 129 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 129.

130. Defendants were the initial transferees or subsequent transferees of the Fraudulent Transfers, or the person(s) for whose benefit the Fraudulent Transfers were made.

**RESPONSE:** Paragraph 130 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 130.

131. Pursuant to Section 550(a) of the Bankruptcy Code and applicable state law, the Trustee is entitled to recover from Defendants an amount to be determined at trial that is no less than **$7,000,000,** plus interest thereon to the date of payment.

**RESPONSE:** Paragraph 131 states a legal conclusion to which a response is not required. To the extent a response is required, Defendants deny the allegations in Paragraph 131.

**WHEREFORE,** the Trustee respectfully requests this Court enter a judgment against the Defendants: (i) allowing the Trustee to avoid and recover for the benefit of ONH AFC CS's bankruptcy estate the Fraudulent Transfers from the initial transferees, any subsequent transferee, and any party for whose benefit the Fraudulent Transfers were made; (ii) awarding pre-judgment and post-judgment interest on any of the avoided transfers at the maximum legal rate; and (iii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

**RESPONSE:** To the extent a response is required to the Trustee's wherefore clause at page 18 of the Complaint, Defendants deny each and every allegation contained therein.

## COUNT VI
### (Unjust Enrichment)

132.    The Trustee repeats and realleges all allegations contained in paragraphs 1 through 131 as though fully set forth herein.

**RESPONSE:** To the extent a response is required to Paragraph 132, Defendants incorporate their response to each preceding paragraph.

133.    ONH AFC CS conferred substantial benefits on the Defendants who received a substantial amount of funds through the Fraudulent Transfers from ONH AFC CS.

**RESPONSE**: Denied.

134.    The Fraudulent Transfers were transferred from ONH AFC CS directly to the Defendants or indirectly for the Defendants' benefit.

**RESPONSE**: Denied.

135.    The benefits conferred on and unjustly retained by the Defendants are in the amount of **$7,000,000.**

**RESPONSE**: Denied.

136.    To the extent Defendants retain any of the Fraudulent Transfers, it would be unjust and against equity and good conscience to permit Defendants to keep ONH AFC CS's funds that were wrongly transferred to the Defendants.

**RESPONSE**: Denied.

**WHEREFORE,** the Trustee respectfully requests this Court enter a judgment against the Defendants: (i) finding in the Trustee's favor on her claim for unjust enrichment in the amount of **$7,000,000**; and (ii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

**RESPONSE:** To the extent a response is required to the Trustee's wherefore clause at page 20 of the Complaint, Defendants deny each and every allegation contained therein.

**RESERVATION OF RIGHTS**

137.    The Trustee reserves the right to bring all other claims or causes of action that the Debtors may have against Defendants, on any and all grounds, as allowed under the Bankruptcy Code, or applicable law, or in equity.

**RESPONSE**: Paragraph 137 states a legal position by the Trustee to which a response is not required.

138.    This Complaint is not intended to be, nor should it be construed as, a waiver of the Debtors' rights to object to any Claims or Proofs of Interest for any reason.

**RESPONSE**: Paragraph 138 states a legal position by the Trustee to which a response is not required.

139.    The Trustee reserves the right to amend this Complaint as new information becomes known to the Trustee at any time during the adversary proceeding, through formal discovery or otherwise, to include such information and/or assertions with respect to the Fraudulent Transfers made to the Defendants; revise Defendants' names; add additional defendants and/or additional causes of action including, but not limited to, those pursuant to 11 U.S.C. §§ 542, 544, 547, 548 and 550, (collectively, the "Amendments"), and that any and all such Amendments relate back to the date of this Complaint.

**RESPONSE**: Paragraph 139 states a legal position by the Trustee to which a response is not required.

**WHEREFORE**, the Trustee respectfully requests that the Court enter judgment against Defendants:

   (a)    Avoiding and recovering the Fraudulent Transfers for the benefit of ONH AFC CS's bankruptcy estate pursuant to 11 U.S.C. §§ 544, 548, and 550 of the Bankruptcy Code and applicable state law;

   (b)    Granting judgment in favor of the Trustee and directing the Defendants, and/or any

other party determined to be an initial transferee, a subsequent or mediate transferee, or a party for whose benefit the Fraudulent Transfers were made, to pay ONH AFC CS's bankruptcy estate an amount to be determined at trial that is no less than **$7,000,000,** plus interest, pursuant to 11 U.S.C. § 550 and applicable state law;

(c)     As alternative relief to the fraudulent transfer claims, finding the Trustee is entitled to judgment for her claim for unjust enrichment in the amount of **$7,000,000**;

(d)     Awarding pre-judgment and post-judgment interest at the maximum legal rate; and

(e)     Granting any other and further relief that is appropriate under the circumstances.

## RESPONSE TO PRAYER FOR RELIEF

Defendants deny that the Trustee is entitled to any relief, including the relief requested.

## GENERAL DENIAL

Any allegation in the Complaint not specifically admitted is hereby denied.

## AFFIRMATIVE DEFENSES

Defendants assert the following defenses, without assuming the burden of proof as to any issue on which the Trustee bears that burden under applicable law. Defendants reserve the right to amend and/or supplement their defenses as more information becomes known during the course of discovery.

## FIRST AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Complaint fails to state a claim against Defendants upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, because Mr. Schwartz operated and controlled the Nightingale entities, including One Night Holdings, The Nightingale Group, LLC, ONH AFC CS, ONH AFC LLC and the Brooklyn PropCo, without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz.

### THIRD AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, by application of the doctrine of substantive consolidation.

### FOURTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, because Defendants took the alleged transfers in good faith and for value without knowledge of their alleged avoidability or fraudulent nature.

### FIFTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, because Defendants were mere conduits for the alleged transfers and, therefore, were not transferees.

### SIXTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, because the alleged transfers were not made to or for the benefit of Defendants.

### SEVENTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, because the Trustee will be unable to prove that ONH AFC CS was insolvent when the alleged transfers were made, was rendered insolvent as a result of the alleged transfers, possessed unreasonably small capital, or intended or believed that it would incur debts beyond its ability to pay such debts as they matured.

### EIGHTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, by N.Y. Deb. & Cred. Law §§ 273, 274, and 275 in that the Trustee will be unable to prove that (1) ONH AFC CS received less than fair consideration in exchange for the alleged transfers, (2) ONH

AFC CS was engaged, or about to engage, in a business or transaction for which its remaining property would constitute unreasonably small capital, or (3) it intended or believed that it would incur debts beyond their ability to pay as they matured.

### NINTH AFFIRMATIVE DEFENSE

To the extent that the Trustee alleges that any employees of Defendants acted in an improper or illegal manner, such conduct, if it occurred, was outside the course and scope of such employees' employment, was not authorized, ratified, or condoned by Defendants, and was undertaken without the knowledge or consent of Defendants. Defendants are not liable for any such conduct.

### TENTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred, in whole or in part, under the equitable doctrine of unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, for failure to join one or more indispensable and/or necessary parties.

### TWELFTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, because the alleged damages were caused by or are the result of actions or non-actions by other parties not named in this lawsuit.

### THIRTEENTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, by the doctrine of waiver, estoppel, laches, or acquiescence.

## FOURTEENTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, because the alleged transfers at issue were made to satisfy an antecedent debt for which the Trustee is not entitled to avoid.

## FIFTEENTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, the Trustee's claims are barred, in whole or in part, because the Trustee lacks standing to maintain some or all of the claims alleged in the Complaint.

## SIXTEENTH AFFIRMATIVE DEFENSE

By way of further answer to the Complaint, Defendants are entitled to a setoff, recoupment and/or offset from any recovery to which the Trustee may be found to be entitled.

## DEFENDANTS' RESERVATION OF RIGHTS AS TO THE COMPLAINT

Defendants hereby give notice that they intend to rely on any additional affirmative defenses that become available or apparent during discovery and, thus, reserve the right to amend their Answer to assert additional defenses.

## DEFENDANTS' PRAYER FOR RELIEF ON THE COMPLAINT

Defendants pray for judgment against the Trustee as follows:

(a)     That judgment on the Trustee's Complaint be entered in favor of Defendants Levi Cohen and Zalman Skoblo;

(b)     That the Trustee take nothing by way of the Complaint and that all claims asserted against Defendants Levi Cohen and Zalman Skoblo be dismissed with prejudice;

(c)     That Defendants be awarded their costs of suit incurred herein; and

(d)     That the Court grants such other and further relief as it deems just and proper.

**THIRD-PARTY COMPLAINT AGAINST ELCHONON SCHWARTZ, ONE NIGHT HOLDINGS, LLC, ONH 14 53RD ST LLC, AND NIGHTINGALE PROPERTIES LLC**

Third-Party Plaintiffs Levi Cohen and Zalman Skoblo, as and for their Third-Party Complaint against Mr. Elchonon Schwartz, One Night Holdings, LLC, ONH 14 53rd St LLC, and Nightingale Properties LLC (together "Third-Party Defendants"), state and allege as follows:

## INTRODUCTION

140.    In late 2022 and early 2023, Third-Party Defendants received $7 million in cash (the "Subject Funds") from Third-Party Plaintiffs in connection with a potential transaction concerning commercial real estate located in Brooklyn, New York, referred to as the Whale Building (such transaction, the "Whale Transaction").

141.    The parties understood and intended that, if the Whale Transaction were not consummated, the Subject Funds would be returned to Third-Party Plaintiffs.

142.    In fact, the Whale Transaction was not consummated, and Third-Party Defendants were therefore obligated to return the Subject Funds, which they did in February 2023 (the "February Transfer").

143.    In the above-captioned adversary proceeding (the "Adversary Proceeding"), Anna Phillips, in her capacity as Liquidating Trustee (the "Trustee") of the ONH Liquidating Trust (the "Liquidating Trust"), seeks, *inter alia*, to avoid the February Transfer and recover the Subject Funds.

144.    If and to the extent the Court enters a judgment against Third-Party Plaintiffs and requires them to pay any amounts to the Liquidating Trust , Third-Party Defendants will be in breach of their obligation to return the Subject Funds and Third-Party Plaintiffs will be damaged thereby.

## PARTIES

145.    Third-Party Plaintiff Levi Cohen ("Mr. Cohen") is an individual and a resident of the State of New York.

146.    Third-Party Plaintiff Zalman Skoblo ("Mr. Skoblo") is an individual and a resident of the State of New York.

147.    On information and belief, Mr. Elchonon (also known as "Elie") Schwartz is an individual and has a residence in New York.

148.    On information and belief, Third-Party Defendant One Night Holdings, LLC is a limited liability company organized under Delaware law with a principal place of business at 1430 Broadway, Suite 1605, New York, New York 10018.

149.    On information and belief, Third-Party Defendant ONH 14 53rd St LLC is a limited liability company organized under Delaware law with a principal place of business at 1430 Broadway, Suite 1605, New York, New York 10018.

150.    On information and belief, Third-Party Defendant Nightingale Properties LLC is a limited liability company organized under New York law with a principal place of business at 1430 Broadway, Suite 1605, New York, New York 10018.

151.    On information and belief, Mr. Schwartz formed and operated several companies for the purpose of investing directly or indirectly in commercial real estate.

152.    On information and belief, these companies included, among others, ONH AFC CS LLC, ONH 1601 CS LLC, and ONH 14 53rd St LLC.

153.    On information and belief, ONH AFC CS and ONH 1601 CS were managed by One Night Holdings, LLC.

154.    On information and belief, One Night Holdings, LLC was managed by Nightingale Properties LLC. *See* Declaration of Eric Lee ¶¶ 7-9 (Dkt. No. 2).[9]

---

[9] Paragraph 25 of the Complaint, however, alleges that Mr. Schwartz was the manager of One Night Holdings, LLC. That allegation is inconsistent with the statement in the *Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* (Doc. No. 2 in the Bankruptcy Cases), which states that Nightingale Properties LLC managed One Night Holdings, LLC. *See Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* at para. 9. The Trustee's inconsistency and inability to

155.    On information and belief, Nightingale Properties LLC is a privately held commercial real estate investment firm controlled by Mr. Schwartz, who is its chief executive officer and founder. *Id.*

156.    On information and belief, Mr. Schwartz operated and controlled various entities, including without limitation, Third-Party Defendants One Night Holdings LLC, ONH 14 53rd St LLC, and Nightingale Properties LLC, as well as Debtors ONH AFC CS LLC and ONH 1601 CS LLC (collectively, the "Schwartz Organization") without regard to corporate formalities, and intermingled assets among himself and those entities for his personal use and benefit. Therefore, those entities are the alter ego of Mr. Schwartz and should be consolidated together.

**FACTUAL BACKGROUND RELEVANT TO THIRD-PARTY COMPLAINT**

157.    In or around 2022, Mr. Cohen and Mr. Skoblo engaged in negotiations with representatives of the Schwartz Organization concerning the Whale Transaction.

158.    As part of those negotiations, the Schwartz Organization demanded that Mr. Cohen and Mr. Skoblo deposit certain funds (the "Pledge").

159.    The Schwartz Organization, Mr. Cohen, and Mr. Skoblo each understood and agreed that if the Whale Transaction were not consummated, the Schwartz Organization would be obligated to return any funds deposited pursuant to the Pledge.

160.    In accordance with the Pledge, Third-Party Plaintiffs caused a total of $7 million to be deposited with the Schwartz Organization, with $3 million being deposited in December 2022 (the "December 2022 Deposit") and $4 million being deposited in January 2023 (the "January 2023 Deposit").

---

distinguish between the corporate separateness amongst the Nightingale entities underscores Third-Party Plaintiffs' belief that Mr. Schwartz operated and controlled the Nightingale entities without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated together.

161.     In connection with the December 2022 Deposit, the Schwartz Organization directed Mr. Cohen and Mr. Skoblo to transfer $3 million to ONH 14 53rd St LLC, and in return, Mr. Schwartz issued a promissory note to Mr. Cohen and Mr. Skoblo in the amount of $3 million (the "Promissory Note").

162.     Mr. Schwartz executed the Promissory Note as a maker, but on information and belief Mr. Schwartz operated and controlled the Schwartz Organization without regard to corporate formalities, intermingled assets among himself and those entities for his personal use and benefit, and therefore those entities are the alter ego of Mr. Schwartz and should be consolidated.

163.     In connection with the January 2023 Deposit, the Schwartz Organization directed Mr. Cohen and Mr. Skoblo to transfer $4 million to One Night Holdings, LLC, and in return, the parties intended that Mr. Schwartz would issue a promissory note to Mr. Cohen and Mr. Skoblo in the amount of $4 million.

164.     Before that promissory note was issued, the parties agreed that the Whale Transaction would not be consummated in the foreseeable future and therefore the Schwartz Organization agreed to return the Subject Funds.

165.     In February 2023, the Schwartz Organization returned the Subject Funds to Third-Party Plaintiffs' counsel, Nussbaum Lowinger LLP ("Nussbaum").

166.     In March 2023, Nussbaum disbursed the Subject Funds in accordance with Third-Party Plaintiffs' instructions.

167.     In June 2024, the Trustee initiated the Adversary Proceeding and seeks, *inter alia*, to avoid the February Transfer and recover the Subject Funds.

### THIRD-PARTY CLAIMS

### COUNT I
#### (Breach of Contract)

168.     Third-Party Plaintiffs repeat and reallege all allegations contained in paragraphs 140 through 167 above as if fully set forth herein.

169.     Pursuant to the Pledge, Third-Party Plaintiffs caused the Subject Funds (totaling $7 million) to be deposited with the Schwartz Organization, including the Third-Party Defendants, in connection with the Whale Transaction.

170.     The parties understood and intended that, if the Whale Transaction were not consummated, Third-Party Defendants were required to return the Subject Funds.

171.     The Pledge constitutes an enforceable agreement between Mr. Cohen, Mr. Skoblo and the Schwartz Organization, including the Third-Party Defendants.

172.     The Whale Transaction was not consummated.

173.     The Trustee has commenced the Adversary Proceeding against Third-Party Plaintiffs seeking, *inter alia*, to avoid the February Transfer and recover the Subject Funds.

174.     If and to the extent the Court enters a judgment against Third-Party Plaintiffs and requires them to pay any amounts to the Liquidating Trust, Third-Party Defendants will be in breach of their obligation to return the Subject Funds and Third-Party Plaintiffs will be damaged thereby.

**WHEREFORE**, Third-Party Plaintiffs respectfully pray for a judgment against Third-Party Defendants as follows: (i) for the total sum of any judgment awarded to Trustee against Third-Party Plaintiffs Levi Cohen and Zalman Skoblo; (ii) costs, fees and expenses incurred in defending the Trustee's Adversary Proceeding and prosecuting this Third-Party Complaint; and (iii) any other and further relief as the Court determines is just and appropriate under the circumstances.

## COUNT II
### (Promissory Estoppel)

175.    Third-Party Plaintiffs repeat and reallege all allegations contained in paragraphs 140 through 174 above as if fully set forth herein.

176.    Pursuant to the Pledge, Third-Party Plaintiffs caused the Subject Funds (totaling $7 million) to be deposited with the Schwartz Organization, including the Third-Party Defendants, in connection with the Whale Transaction.

177.    The Schwartz Organization, including the Third-Party Defendants, unambiguously promised to return the Subject Funds if the Whale Transaction were not consummated.

178.    Third-Party Plaintiffs reasonably and foreseeably relied upon such promise when causing the Subject Funds to be deposited with the Schwartz Organization.

179.    The Whale Transaction was not consummated.

180.    The Trustee has commenced the Adversary Proceeding against Third-Party Plaintiffs seeking, *inter alia*, to avoid the February Transfer and recover the Subject Funds.

181.    If and to the extent the Court enters a judgment against Third-Party Plaintiffs and requires them to pay any amounts to the Liquidating Trust, Third-Party Plaintiffs will have sustained an injury as a result of Third-Party Defendants' failure to return the Subject Funds and Third-Party Plaintiffs will be damaged thereby.

**WHEREFORE**, Third-Party Plaintiffs respectfully pray for a judgment against Third-Party Defendants as follows: (i) for the total sum of any judgment awarded to Trustee against Third-Party Plaintiffs Levi Cohen and Zalman Skoblo; (ii) costs, fees and expenses incurred in defending the Trustee's Adversary Proceeding and prosecuting this Third-Party Complaint; and (iii) any other and further relief as the Court determines is just and appropriate under the circumstances.

## COUNT III
### (Unjust Enrichment)

182.    Third-Party Plaintiffs repeat and reallege all allegations contained in paragraphs 140 through 181 as though fully set forth herein.

183.    Third-Party Plaintiffs conferred substantial benefits on Third-Party Defendants who received at least $7 million in funds as a result of the December 2022 Deposit and January 2023 Deposit transferring the Subject Funds to the Schwartz Organization, including Third-Party Defendants.

184.    Pursuant to the Pledge and at Third-Party Plaintiffs' expense, the Subject Funds were deposited with the Schwartz Organization, including Third-Party Defendants.

185.    The parties understood and intended that, if the Whale Transaction were not consummated, Third-Party Defendants were required to return the Subject Funds.

186.    Because the Whale Transaction was not consummated, Third-Party Defendants were obligated to return the Subject Funds.

187.    If and to the extent the Court enters a judgment against Third-Party Plaintiffs and requires them to pay any amounts to the Liquidating Trust, Third-Party Defendants will have unjustly benefited and retained the $7 million Subject Funds deposited with the Third-Party Defendants, and it would be unjust and against equity and good conscience to permit Third-Party Defendants to keep those funds.

**WHEREFORE,** Third-Party Plaintiffs respectfully pray for a judgment against Third-Party Defendants as follows: (i) finding in Third-Party Plaintiffs' favor on their claim of unjust enrichment in the amount of any judgment awarded to Trustee against Third-Party Plaintiffs Levi Cohen and Zalman Skoblo; and (ii) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## PRAYER FOR RELIEF ON THIRD-PARTY COMPLAINT

**WHEREFORE**, Third-Party Plaintiffs respectfully request that this Court enter judgment in favor of Third-Party Plaintiffs and against Third-Party Defendants as follows:

(a) Granting judgment in favor of Third-Party Plaintiffs on all third-party claims alleged herein;

(b) Damages in favor of Third-Party Plaintiffs in an amount to be determined at trial (but not less than the amount of any award in favor of the Trustee on the Complaint), plus interest in an amount to be determined at trial;

(c) Award Third-Party Plaintiffs all expenses, costs, and fees, incurred in defending against the Trustee's Complaint and prosecuting this action; and

(d) Granting any other and further relief as the Court determines is just and appropriate under the circumstances.

Dated: August 26, 2024

Respectfully submitted,

/s/ Howard A. Cohen
**FOX ROTHSCHILD LLP**
Howard A. Cohen, Esq. (DE Bar No. 4082)
1201 N. Market St., Suite 1200
Wilmington, DE 19801
Tel: (302) 427-5507
Fax: (302) 656-8920
hcohen@foxrothschild.com

**KATTEN MUCHIN ROSENMAN**
Shaya Rochester, Esq. (*pro hac vice* forthcoming)
Eliot Lauer (*pro hac vice* forthcoming)
50 Rockefeller Plaza
New York, NY 10020-1605
Tel: (212) 940-8529
Fax: (212) 940-8776
shaya.rochester@katten.com
eliot.lauer@katten.com

Andrew J. Pecoraro (*pro hac vice* forthcoming)
1919 Pennsylvania Ave., NW – Suite 800
Washington, D.C. 20006
Tel: (202) 625-3719
Fax: (202) 298-7570
andrew.pecoraro@katten.com

*Counsel for Defendants Levi Cohen and Zalman Skoblo*

52

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2024, I caused the foregoing to be filed with the Clerk of the U.S. Bankruptcy Court for the District of Delaware using the Court's CM/ECF system. Service was accomplished on all counsel of record via the Court's CM/ECF system.

/s/ *Howard A. Cohen*
Howard A. Cohen, Esq.